J-A09038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| THE SCRANTON CLUB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TUSCARORA WAYNE MUTUAL | : | |
| GROUP, INC., SUSQUEHANNA | : | |
| CAPITAL CORP., TUSCARORA WAYNE | : | |
| INSURANCE COMPANY, TUSCARORA | : | |
| WAYNE MUTUAL INSURANCE | : | |
| COMPANY | : | No. 238 MDA 2021 |

Appeal from the Order Entered January 25, 2021,
in the Court of Common Pleas of Lackawanna County,
Civil Division at No(s): 20 CV 2469.

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN: **FILED JANUARY 27, 2025**

This case returns to us following a remand from the Supreme Court of Pennsylvania following its decision in ***Ungarean v. CNA & Valley Forge Ins. Co.,*** 323 A.3d 593, 608–09 (Pa. 2024). Initially, we relied on this courts *en banc* ruling in ***Ungarean***, 286 A.3d 353 (Pa. Super. 2022), *appeal granted*, 301 A.3d 862 (2023), to determine that the trial court erred in part, when it sustained preliminary objections filed by the Defendants and dismissed all claims filed by the Scranton Club. The Defendants appealed our decision. Recently, the Supreme Court granted their petition for allowance of appeal, vacated our original decision, and remanded for us to reconsider our ruling in light of its decision in ***Ungarean***. Order of Supreme Court, 12/23/24 (per

curiam). We now affirm the trial court's dismissal of all claims filed by the Scranton Club.

In **_Ungarean_**, the policy language was virtually identical to the policy language here. Upon review of Ungarean's policy with CNA, the Supreme Court determined that no claim for coverage existed due to the COVID shutdown of Ungarean's business.

> [W]e conclude that the language of the CNA Policy is not ambiguous because it is subject to only one reasonable interpretation. That is, for coverage to apply under the CNA Policy, there must be a physical alteration to the subject property as a result of a direct physical loss or damage necessitating repairs, rebuilding, or entirely replacing the property. As applied to the present case, we fail to find any facts in the record suggesting that the Covered Properties required these necessary actions in order to trigger coverage under the CNA Policy. As CNA explains, Ungarean did not lose access to the Covered Properties during the government-ordered COVID-19 shutdown whatsoever; Ungarean could enter the Covered Properties at will and Ungarean's business remained open for emergency dental procedures. The only loss Ungarean sustained, rather, was _pure_ economic loss because the government-ordered COVID-19 shutdown prevented Ungarean from operating his Covered Properties at their full potential. That partial closure, however, had nothing to do with the physical attributes of the Covered Properties, as required by the CNA Policy for insurance coverage.
>
> What's more, Ungarean does not allege that the COVID-19 virus was on the Covered Properties or caused any physical damage thereto at any time during the government-ordered shutdown that might somehow trigger insurance coverage under the CNA Policy. Stated differently, the sole reason Ungarean's business suffered financial losses during the period in question was due to the government-ordered shutdown, not any alleged physical condition of the Covered Properties. In addition, we reject the rationale of the trial court and the Superior Court that COVID-19 required "many physical changes to business properties across the Commonwealth," such as "the installation of partitions,

additional handwashing/sanitization stations, and the installation [ ] or renovation of ventilation systems" that would constitute repairing, rebuilding, or replacing the subject property under the "period of restoration" language of the CNA Policy. Adding *new* installations that do not correct a physical attribute of the property does not constitute repairing, rebuilding, or replacing the *existing* property as a result of a physical loss or damage. To hold otherwise would clearly "distort the meaning of the [CNA Policy's] language [and] resort to a strained contrivance."

***Ungarean v. CNA & Valley Forge Ins. Co.,*** 323 A.3d 593, 608–09 (Pa. 2024) (quotations and footnote omitted).

Here, The Scranton Club's claims are substantially similar to those claimed by Ungarean. The trial court ruled that The Scranton Club did not allege any facts to establish that it incurred a "direct physical loss of or damage to property" as required to establish coverage under the policy. After surveying various cases involving a policy requiring "physical loss of or damage to" property, the court noted that to trigger coverage, there must be "some form of physical damage to [The Scranton Club's] premises that rendered it uninhabitable or unusable." Trial Court Opinion, 1/25/21, at 34. The court further opined that the policy's definition of "period of restoration" contemplated that there would be some physical damage that required repair, rebuilding, or replacement, thereby lending support to the requirement that there be some physical damage or alteration to the property. The court noted that The Scranton Club did not allege any damage or alteration to its property or that any repair, restoration, or replacement of the premises occurred during the period of restoration. Consequently, the trial court held that The Scranton

Club failed to allege facts to establish a claim within coverage of the policy. *Id.* at 36.

Based on the Supreme Court's decision in ***Ungarean***, we agree. There was no "physical damage" and therefore nothing that required restoration of The Scranton Club's property as a result of the COVID shutdown. As such, there was no coverage under the policy.

Previously, we concluded that the trial court did not err in overruling the Defendants' demurrer based upon the Virus Exclusion. Initially, the trial court held that application of the Virus Exclusion could not be determined as a matter of law. Trial Court Opinion, 1/25/21, at 25. We agreed. However, since we now determine that there is no coverage at all under the policy, we need not decide whether the Virus Exclusion precludes recovery. This issue is moot.

Next, we held that the trial court did not err or abuse its discretion when it dismissed The Scranton Club's claims for coverage under the Civil Authority language of the policy. To assert a claim for the Civil Authority Coverage under the policy at issue here, the civil authority action prohibiting access to The Scranton Club's premises must have been in response to "damage" caused to another property. That property must have been "damaged" and there must have been some ongoing "dangerous physical condition" stemming from the "damage" to the other property.

Here, The Scranton Club did not allege that any neighboring properties sustained any damage which resulted in its property being shut down. Thus,

we concluded the trial court did not err in dismissing its claim for Civil Authority coverage. The Supreme Court's decision in **Ungarean**[1] does not change our analysis of this issue; we continue to affirm.

Finally, we affirm the trial court in its dismissal of The Scranton Club's claim for bad faith. The trial court concluded that because coverage was not available, The Scranton Club could not establish a claim for bad faith. The trial court based its decision on the premise that, "where coverage does not exist, the insured is unable to state a bad faith claim on the ground that coverage was improperly denied." Trial Court Opinion, 1/25/21, at 41. Initially, we reversed on this issue because we reversed on the coverage issue for a direct physical loss. Because we now affirm the trial court's dismissal of the physical loss claim, we also affirm the dismissal of the bad faith claim.

Order affirmed.

_____

[1] In **Ungarean**, the Supreme Court determined that "[b]ecause the government-ordered COVID-19 shutdown cannot constitute 'direct physical loss of or damage to' **any** property, the Civil Authority Endorsement" simply did not apply. **Ungarean**, 323 A.3d at 610. Unless there was some damage other than a COVID-19 shutdown to a neighboring property, no coverage existed. Here, no such damage was alleged.

Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 01/27/2025